· (163 App. Div. 131)

LAMOUR v. NORTHERN IRON CO. (No. 185–89.)

(Supreme Court, Appellate Division, Third Department. July 1, 1914.)

1. MASTER AND SERVANT (§§ 101, 102*)—MASTER'S DUTY—TOOLS AND APPLIANCES.

A master cannot be held liable for the death of a servant, unless it appears that the servant, whose duty it was to use the appliances furnished, was injured because of a defect therein.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 278*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—DEFECTIVE TOOLS AND APPLIANCES.

In an action under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204) for the death of plaintiff's intestate from the overturning of a derrick car in his charge while moving on a narrow-gauge track, by reason of the swinging of a boom which it was his duty to see placed in a proper position when moving the car, evidence held insufficient to

show negligence in not furnishing a set screw designed to hold the bolt furnished to keep the boom in place while moving on the track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Howard, J., dissenting.

Appeal from Trial Term, Essex County.

Action by Bridget Lamour, as administratrix, against the Northern Iron Company. From a judgment for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Weeds, Conway & Cotter, of Plattsburg (T. B. Cotter, of Plattsburg, of counsel), for appellant.

Leary & Fullerton, of Saratoga Springs (James A. Leary, of Saratoga Springs, of counsel), for respondent.

WOODWARD, J. This is an action to recover damages arising from the death of plaintiff's intestate, alleged to have been produced through the negligence of the defendant. The action is brought under the Employers' Liability Act, and presents one of those cases in which counsel for the defendant is placed practically at the mercy of an adroit adversary, who persistently interjects into the case matters trivial in themselves, and no one of which, standing alone, would justify interference, but which in their cumulative result cannot fail to prejudice the average juror, and render the verdict of the jury worthless as an expression of unimpassioned judgment. "I agree with counsel for defendant," says the court in passing upon the motion for a new trial, "that the conduct of plaintiff's counsel in these regards (in asking improper questions and in making improper suggestions to the jury in summing up) was reprehensible, but cannot go to the extent he urges and grant a new trial for that reason. I do not believe that the jury were influenced by these matters: To assent to the suggestion that they were would be giving but little credit to their intelligence." But subtle and misleading suggestions, which might appear to a trained lawyer as worthy only of intellectual contempt, are often the determining factor in cases of this character, and where the negligence complained of is not clearly presented, and the whole case is insinuated to the jury, rather than proved, considerations of justice demand that parties shall not be permitted to prevail through such methods.

Plaintiff's intestate was killed while engaged in operating a derrick car upon the defendant's premises. This car was mounted upon narrow-gauge tracks, and upon the platform of the car was an ordinary derrick, with a boom 28 feet in length extending from the revolving platform on the car to the limit of its radiation in whatever direction it was pointed, and this boom was operated and controlled by the engineer of this car by means of certain levers which controlled the operating machinery. The plaintiff's intestate, the engineer of this car, had been fully instructed in the operation of the machinery, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

accident happened, not while the machinery was in use, but while the car, which was moved from place to place in the yards by means of its own power geared to the shafting of the car, so that it moved at the rate of about two miles per hour, was being taken to a new position. The rules, and the obvious requirements of intelligent operation, provided that when this car was being moved from point to point the boom of the derrick should be suspended over the length of the car and between the lines of the rails. The car had a full equipment of outriggers, jacks, etc., for fastening it and holding it in position when the boom was being used to lift, by means of a magnet, the heavy loads of pig iron which were handled by the defendant in the course of its business; but these had to be taken in when the car was moved, and it was the duty of plaintiff's intestate, as the operator of this car, to place the boom in a proper position, and it is conceded that this particular car was equipped with a bolt which was designed to hold the boom in position while the car was being moved, and that it was originally supplied with a set screw which would hold the pin in position, but there was some evidence that this set-screw had been taken out and thrown away by an engineer who had formerly operated this car, and it is right at this point that the actionable negligence, if any, is to be found. There was undisputed evidence that the defendant supplied plenty of set screws, which plaintiff's intestate could have had by the asking for them, and it was obviously his duty, if there was any part lacking in the machine, to call attention to the matter at least, and there is evidence from which the jury would be entitled to find that there was in fact such a set screw actually installed in the machine at the time of the accident.

But, assuming that the evidence upon this point predominated in favor of the plaintiff, the point that we desire to impress at this time is that, the accident having happened by reason of the derrick boom, carrying the heavy magnet at or near the end of the same, swinging around from a line with the car to right angles, tipped over the entire apparatus, catching plaintiff's intestate in the cab of the car in such a manner as to produce his death, the plaintiff's attorney, in drawing his pleadings, which under the provisions of the Code should give a "plain and concise statement of the facts" constituting the cause of action, has alleged several folios of matter in relation to an alleged "unsafe and improper place to work, where he was exposed to great and unnecessary danger," and which are obviously allegations relating to a common-law action, and which as clearly had no relation to the accident which actually happened. But these allegations had their purpose. They afforded the pretext for the introduction of testimony, afterward stricken from the record, tending to create the impression that the defendant had been generally negligent in reference to the place in which the plaintiff's intestate was called upon to work.

Thus, while the only legitimate question of negligence involved in the case was whether the derrick in use was properly equipped to hold the derrick boom in position while being moved to a new location, plaintiff's counsel continually invited the attention of the jury to alleged defects in the construction of the narrow-gauge railroad, which

was designed for moving the cars about the defendant's yard, and over which this derrick car traveled only at the rate of two miles an hour, or slower than the average man walks, and which could not have had any possible bearing upon the accident which actually occurred, if the boom had been placed and held in its proper position at the time. Indeed, in several instances, the testimony did not relate at all to the point where the accident occurred, and, while this was stricken from the record, plaintiff's counsel did not permit it to drop from the minds of the jurors, but by indirection was continually bringing it before them, though admonished by the court to confine himself to the evidence. For instance, much time was devoted to an attempt to prove that the space between the ends of the rails in the yard at a switch were several inches apart—some three inches or more—and while the weight of evidence is clearly in favor of the proposition that the distance was not to exceed one inch, the uncontradicted evidence is that a space of five inches would have no appreciable effect upon a car passing over it at the rate traveled by the car in question, and the whole matter had no bearing whatever upon the real issue in the case, except to prejudice the minds of the jurors and prevent them giving their attention to the question which alone could justify the verdict. It is almost impossible to separate the legitimate from the illegitimate in this case.

[1, 2] Counsel for plaintiff appears peculiarly gifted in obscuring the true issue and presenting the false, without affording the opportunity for a legal objection; but he has overreached himself in the present instance, from the fact that in his anxiety to influence the jury he has overlooked the essential fact in his case in reference to the accident which actually happened. He has not shown conclusively, or by a fair preponderance of evidence, the lack of the set screw designed to hold in position the bolt which was furnished to keep the boom in place while being moved to a new position; but beyond this he has nowhere furnished evidence that the boom was ever put in a proper position for the moving of the car, or that the pin was properly placed to hold it there, and, until these things are made to appear, the question of whether there was a set screw to hold the pin in place or not is of no consequence whatever. The only other defect alleged as against the derrick is that the boom upon the car at the time of the accident was about seven feet longer than the one originally upon the derrick and that it weighed something over 500 pounds more than the one which was replaced; but there is not the slightest evidence that this fact would have had any possible tendency to overturn the derrick car if the boom had been placed where it belonged in line with the car and track and held in that position, and there is no evidence whatever that the machinery was not capable of handling the boom, or that it could not have been held in position by such machinery, or by the use of the pin which was concededly provided, and which is not shown to have been inadequate for the purpose, and it is more than probable, from a reading of the record, that the purpose of the set screw was to hold the pin in place during a long trip, where the vibration would be likely to get it out of position, for the evidence is that the pin dropped

into a slot some two inches or more, and that some of the men who had operated the car never used the set screw, but placed the pin and held it in position with the foot, and there was evidence that the pin could not get out of place while the weight of the boom was thrown upon it in either direction—that the binding force would hold it in place, except when the boom was directly in line with the car.

The plaintiff's case depends entirely upon the assumption, nowhere proved, that the boom was placed in position and the pin properly placed, and that the pin came out by reason of the set screw not being in position. It is true that there was some evidence that at some point the crane was being carried between the rails; but no one suggests anywhere that the same had been placed and held in position by the ·use of the pin provided for that purpose, and which appears conclusively to have been adequate for the end in view, and plaintiff's intestate was alone responsible for the use of the machine. The defendant cannot be held liable unless it appears that the plaintiff's intestate, in making use of the appliances furnished, was injured because of a defect in such appliances, and this case certainly fails to show that the boom was placed and that the pin was placed while the boom was in the position of safety; and, as we have already suggested, until the pin was shown to be used, it could be of no possible importance whether the set screw was in proper condition or not, for it had no purpose until the pin was put into the slot designed for it. The boom, it is to be remembered, was operated by the machinery. The plaintiff's intestate could not hold it in line by the use of the machinery which controlled its operation, and if he was carrying the boom between the rails at a time just before the accident it does not follow that he had the pin in position. The evidence is to the effect that the track was running downgrade at that point, and the boom would naturally fall into line and remain there without the pin, except for the lateral motion of the car in passing over a curve or other inequality in the grade of the tracks, and if the plaintiff's intestate was depending upon the machinery to hold the boom in line, it might easily happen that the swing of the car and the weight of the magnet at the end of the boom would carry it out of line and beyond control; but this would not be the fault of the defendant, if it had provided proper appliances to prevent such a movement, and the intestate had failed to make use of them.

In the accident which happened the defendant was liable only for a defect in the machinery or appliances of this derrick car which would permit the boom to sway from a direct line with the tracks on which the car was running, which would deflect the heavy weighted boom from the "dead center," and the case does not show any such defect. The pin was concededly ample for the purpose for which it was designed, and until we know that the pin was used we have no right to assume that it failed to perform its function because of an alleged defect or want of a set screw to hold it in place. Clearly the proximate cause of this accident was the absence of the pin from its socket, for no one contends that it could have occurred if the boom had remained at "dead center," and the fact that the pin was not in its socket raises·

no presumption that it had been there before, and as there was no defect in the pin we cannot permit a jury to speculate as to the negligence of the defendant in respect to a set screw which could not have prevented the accident if the pin had not been placed. The negligence of the master must be in relation to something producing the injury in order to give a cause of action, and everything testified to in this case may be true and yet the defendant may not be liable. Indeed, if we were considering the weight of evidence upon the question of contributory negligence, the case would fairly justify a reversal, for with the given fact that the accident could not have occurred with the pin in position, and the intestate having the entire control of the machinery, the happening of the accident would show that the pin was not in position, and the fair inference would be that in the short move of a few hundred feet he had elected to rely upon holding the boom in position by the use of the machinery rather than making use of the appliance furnished for that purpose. Besides, it was in evidence that other engineers had been in the habit of placing the pin and holding it in position with the foot in making these changes of location, and even if there was a set screw in a defective condition this fact would be patent to the intestate, and he could have obviated the accident by merely placing his foot upon the pin, or a careful control of the machinery. This was not a wild ride upon a swaying train. It was merely a changing of location of a work car, moving over iron rails at the rate of two miles an hour, and the defendant was only required to use reasonable care. Something was left to the operator.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except HOWARD, J., who dissents.